So, we'll go ahead and call Mylan Inc. v. Commissioner of Internal Revenue. Mr. Carpenter. Thank you, Your Honor. May it please the Court, my name is Clint Carpenter, and I represent the Commissioner of Internal Revenue in this case. I'd like to reserve three minutes for rebuttal, please. Okay. Go ahead. Mylan was required to capitalize its patent litigation expenses because it incurred those expenses in the process of pursuing its acquisition of intangible capital assets. Let's just dive right in, all right? Yep. Now, you've used the in the process of language, which you've been taken to task for by your friends from Latham, and I want you to defend that framing. They say the Commissioner took the position that this is a step. It's not some vague process out there, but this paragraph for certification in the course of making your ANDA application and the ensuing litigation that may or may not ensue is not just a part of some grand process. It is a specific, statutorily defined step, but one step. Now, you appear to have distanced yourself from that. I'm wondering why. Yeah, and perhaps our opening brief was unclear on that. Our intention is not to distance ourselves from that. Certainly, our position continues to be that it is a step in the process of pursuing. It's a step in the paragraph four process for acquiring effective FDA approval. I mean, the point is, like, at one level, the point becomes what type of step is it? It's not always necessary to do this. That's right. And so at most, I think what you could say is that it's a contingent step. And so it's not a necessary step. And so if the standard is just relates to necessary steps and doesn't sweep in contingent steps, then that's a problem. But if facilitate also means contingent steps as well, then you're doing better in the facilitate space. That's right. That's right. And I think that's what we were getting at with the idea that we were distancing ourselves. The tax court treated it as, you know, to qualify a step has to be necessary in every case, and that even qualified it further has to be necessary to the FDA's approval process specifically. And you're acknowledging that it's not. It's not part of the scientific review process. That's right. Yeah, it's not part of the scientific review process, and it's not even something that always happens. You're acknowledging that happens sometimes, doesn't happen other times. That's right. That's right. And it's not necessary to get approval of the ANDA. That can happen whether the patent litigation goes forward or not or whatever happens in the patent litigation. It's not necessary to get approval of the ANDA, but it is necessary to get effective approval where the effective date is before the patent, the brand name patents expire. So that really depends. So, I mean, at one level then the case, one of the big issues in the case is how do we define the transaction? If we define the transaction as only getting FDA approval, then this doesn't facilitate that at all. If we define the transaction as needing effective approval, then what you would say is this process, even though it's a contingent step, does facilitate that. And then you probably still have to deal with like origin of the claim stuff and things like that. But at least to be in the ballgame at all, you're asking us to define the transaction not as just FDA approval, but effective FDA approval. Is that right? That is how we define the transaction. That's how the tax court defines it. That's how the tax court did it too. Right. But effective, what's the magic in the word effective? Well, the magic is it's actually, it's an important part of the Hatch-Waxman Act, the process that it's set up. It's actually, it's the first provision in the FDA half of Hatch-Waxman Act. It's Section 355A of 21 U.S.C. So you have to file a petition for letter if that's, or you check the blank and the patent holder gets notified. But nothing really has to happen about that. The patent holder is not necessarily going to file an infringement suit. Whatever happens in the infringement suit is not a condition of whether the ANDA will be released or not. The effective day of the patent, if it's found to be effective, has nothing to do with what the FDA does in connection with approving or not approving the ANDA. Specifically the approval, that's right. But the statute defines, well, it says, you know, subsection A, necessity of effective approval of application, and it says no person shall introduce or deliver for introduction into interstate commerce any new drug unless an approval of an application, et cetera, et cetera, is effective with respect to the drug. Right. We get it. I think they get it. Everybody knows you can't go to market with the drug that you haven't got FDA approval for, and I think everybody knows that you can't go to market with the generic drug invoking the ANDA apparatus under Hatch-Waxman unless you go through the steps that the statute requires. That's understood. Well, you would agree, would you not, that the Hatch-Waxman Act represents a very careful balancing of multiple societal interests and one of the primary ones being to bring generic drugs to market? Yes. Okay. And that when this was negotiated and came to fruition back in 1984, this congressional understanding of how this was going to work was done against the background of existing law, right? Sure. Okay. And one of those pieces of existing law was our Urquhart decision that said patent litigation expenses are deductible as ordinary business expenses. True? I think it was a little more qualified than that, but generally speaking, yes, at least for the patent holder. And for then more than a quarter century, that's the world we lived in, that Hatch-Waxman Act, just like every other kind of patent litigation act, produced litigation expenses. Plaintiffs were allowed to deduct. Defendants were allowed to deduct. It wasn't also a purpose to protect the patent holder. That's right. I think it was a balancing of those two interests. They didn't have to have an infringement and lose some income because the generic was coming in and infringing. They could get a determination of validity of their patent before there was any infringement problem for them. That's correct, yes. And, indeed, it was set up so that the filing of the paragraph 4 certification would be a technical infringement so that there could be this apparatus kicking into gear to protect the patent holder. That's right. Okay, so if all that's true, why is the tax court wrong? Why would we say the tax court is wrong when it concludes, well, this isn't some capitalized business expense to acquire an intangible right. This is the result of a statutory regime which makes some shifts in patent litigation, but it protects patent holders and it's part of the overall design of Hatch-Waxman to bring generic drugs to market. Why would, after more than a quarter century of operating that way, should the tax court have viewed it any differently than that? Why should we view it any differently than that? Sure. Well, this is the first case where this issue has come up, and we should view it differently because the… Because all of a sudden the commissioner decided to think of it differently. Nobody thought of this before. Yeah, here we are decades after the fact litigating this because the commissioner one day or somebody in that office thought, there's money there. What changed in the world to make it suddenly the fact that this was the acquisition of an intangible asset and not merely litigation like all other kinds of litigation except litigation that the Congress decided it would give some special twist to balance the right of patent holders and incent generic entry into the market? Well, because the twist that Congress enacted, which it doesn't benefit only patent holders. The ability to file suit benefits patent holders, but the whole paragraph four process is set up ultimately to benefit the generic drug manufacturers by allowing them to obtain approval that becomes effective earlier than they otherwise could. Does taxing their litigation expenses differently or treating it differently, I should say, for tax purposes, does that not alter the careful balance that Congress sought when it was doing this hatch-waxman balancing? I mean, you're talking about a pretty darn significant change. If Congress was so careful about this balancing, aren't you throwing a monkey wrench into it? No, I don't think so. Congress didn't speak to, there's nothing in the legislative history that indicates they weren't considering tax consequences. And to be clear, this is just an issue of timing. No one's saying that they can't deduct these expenses. That's the big issue with timing. I mean, does it really do, Mr. Carpenter, say it's just timing? If it didn't mean millions of dollars to people, we wouldn't be here. They would just pay it. But it does mean millions of dollars to people. And pretty soon, millions of dollars add up to real money. So it's not just timing. It's real money. It's a real hit. And so I guess I go back to Urquhart. When Urquhart says this is litigation, it's deductible, why does the commissioner think that the fact that hatch-waxman exists means this kind of litigation is different? In fact, it's only different for the protester, for the defendant. The commissioner hasn't taken the position that the patent holder in these hatch-waxman acts can't deduct its litigation expenses, right? That's right. And it's because the patent holder is litigating for a different reason. The patent holder is not litigating in pursuit of acquiring an intangible capital asset. They're litigating to protect their existing, they already have a patent. But the applicant is litigating this case in pursuit of acquiring an intangible capital asset. But it's not litigating the case to acquire an ANDA. It's litigating the case, if it is litigated, to determine the validity or not of someone else's patent. That's not correct. They have no reason to care if the patent is valid or not, apart from their interest in acquiring an effective date that's before the patents expire. This litigation would not exist, there would be no infringement, if they were not pursuing acquisition of effective approval of their ANDA through the Paragraph 4 process. And that's really what makes the difference. I think you've got a question here. All right. Well, your assertion that that's not right, I presided over these cases. Judge Roth has presided over these cases. I've never once had anybody in an ANDA case say, this case, your honor, is about whether we get FDA approval or not. This case is whether we acquire an intangible right. What's at issue in the ANDA case is the invalidity of the patent or the infringement of the patent. Those are the only things that are at issue in the case, ever. So when you say it's not true that that's not what it's about, that is what it's about. That's what it's always about. You can say it's connected to, it has some relation to, but how does it have any more relation to what the FDA does than some of the examples that are in the regulation? Speak to the Paragraph 18 point that is, or excuse me, the example 18 point that is made by your colleagues when they say, all kinds of things are done when you're launching a product, but these preparatory things for marketing, development plans like that, those are all deductible. They're all in pursuit of that, but they're not capital expenses. Here, they're making the argument. I'm not doing it as artfully as I'm sure Mr. Garra will do, but they're saying, same thing. These are things that get done, and they've got a relation to, but they are not the acquisition of the ANDA. Advertising and buildings and so forth, those things have nothing to do with acquiring effective approval of the ANDA. So let me back up. The reason, the intangible asset is effective approval of the ANDA, and that's because under the regulation, it's the right that you acquire from the government, that's the intangible capital asset, and until your approval becomes effective, you don't have any right to market your drug. That's true, but that can happen with or without litigation, and it can happen before there's litigation, and it can happen after there's litigation. There's approval that happens, and it comes after the litigation with respect to the ANDA has already, or the ANDA litigation has already taken place, and there's a choice. There's a choice to say, you know what, we're going to.  That's right, but in those cases, they don't incur any litigation expense, and so there's nothing to capitalize in those cases. I mean, this case is about what happens when they do sue. It's meaningful because what you're saying is it's an essential part of this process. It's inextricably linked to do it, but it isn't because it doesn't happen sometimes. Well, the regulation sweeps much more broadly than that. The regulation requires capitalization of costs that are incurred to facilitate the acquisition of an intangible, and it defines facilitate as including all costs that are incurred to investigate or incurred in investigating or otherwise pursuing the acquisition. Of the regulations, is your strongest point example 10 under A5 that talks about antitrust and how you might not always be sued for a merger, but if you do get sued for a merger and you incur costs for that merger, then you have to capitalize those costs. That's how I read it. You may have a different gloss on 10, but that's how I read 10. No, that's, I think, we think example 10 is the most on point of the examples because it recognizes that an acquisition that has potential antitrust implications, maybe the government sues to stop it, maybe it doesn't, but when the government does bring an antitrust suit, the cost that the defendant incurs in the litigation expenses that the defendant incurs in that case has to be capitalized because the defendant is litigating that in furtherance of the acquisition. Because it's acquiring something. That's right. That's right, and that's happening here as well. And so the intent, so the asset that it's acquiring is kind of a bigger corporate entity, and what you're saying is that in this instance the transaction isn't a merger, and it's not even FDA approval, it's the acquisition of effective approval, which is the most important thing under subsection A. And so you say I'm reading subsection A and I'm reading example 10, and I put those two together and then I find out that this is in the realm of facilitate. That's exactly right. But the litigation is not acquiring the patent. No, that's correct, and that's why ordinarily patent litigation expenses are deductible. The reason for capitalization is to match the costs of acquiring an asset that will bring a future income string to that future income. And in ordinary patent litigation, both sides are litigating about an existing income stream. One side wants to avoid damages and wants to continue marketing their allegedly infringing product. The other side wants to protect their patent. That's not the case here. That's right. That's right, and that's the whole reason. And that's the commissioner's position. Yes. And I misspoke a minute ago when I said paragraph 18. It was paragraph 7, which was the marketing cost. Your opponents also make the example 18 point, and that's the bankruptcy context where the position taken in the example is that amounts paid to outside counsel to analyze and fight and resolve tort liability do not facilitate reorganization and are not required to be capitalized. Patent infringement allegations sound in tort. That's an old, old principle. Why is it that in one context you would say, you know what, it's true you're acquiring an asset in a sense. You're reorganizing, and in fact, we say that the things dealing with the reorganization are ones to be capitalized. But things to resolve the tort in that context are to be treated as ordinary business expenses, and yet in this instance you say, oh, no, you're resolving that infringement tort, but that's got to be capitalized. I think in the example that has some bankruptcy-specific nuances to it that relate to bankruptcy-specific rules, which we addressed in our brief, I mean, I think the difference here is that Congress set up a process where to get the effective approval they want, they have to infringe the patent on purpose. So we should be paying attention to that careful balance, that careful balance Congress struck. Sure. I mean, I think I would frame it as the text of the statute and the regulation. There's nothing in the statute that says, as you've been eager to point out, that says boo about taxation. We can infer that Congress understood that patent litigation is treated as ordinary business expenses because that's the way it's been treated for decades and decades in this circuit and across the country, right? Patent litigation, but there's a reason patent litigation expenses are treated that way. But they legislated against that background. What you're saying now is even though you acknowledge they said nothing about taxes, they really meant for part of that balance to be, and you're going to pay for this in capitalizing your litigation expenses. That's implicit in your argument that Congress, even though it knew, because we assume it knows about background law, even though it knew in every other patent case that comes along that those are deductible expenses, that in this case it meant for those things to be capitalized. That was its understanding, even though it didn't say anything about it. Well, I don't think the court needs to reach that question, but if we're going to think about the background law, sure, the background law is that patent litigation expenses are usually deductible because they're not capital expenditures. And the background law for even longer than Urquhart has been that costs incurred in acquiring an intangible capital asset, which the effective FDA approval is, have to be capitalized. Well, you have to put the rabbit in the hat, right? That's where the disagreement is. You can't assume what you're asserting. You're assuming that this is part of acquiring the asset, and it's not simply a related expense and not the acquisition of the asset. So we'll have you back on rebuttal, and we'll hear from counsel for a while. Thank you. Thank you, Judge Jordan, and may it please the court. The tax court correctly held that the patent litigation expenses at issue in this case are deductible as ordinary and necessary business expenses. That conclusion comports with this court's longstanding precedent concerning deductibility of patent litigation expenses, and nothing in Hatch-Waxman or the 2004 regulations changes that in a bit. At the outset, I want to make the assertion that this is part and parcel of and inextricable. It's like example 10. It is like the antitrust litigation. Right. Well, in example 10, Your Honor, which is the American Stores case, in that case, the court held that the litigation was necessary to effectuating the merger at issue. Here, the litigation couldn't be farther from necessary to obtaining the intangible effective and approval. In fact, the statute makes that crystal clear. Section 355J5B3 says that the FDA shall approve the ANDA immediately, and that ANDA will be immediately effective once it determines that the scientific requirements are met. So the litigation is by no means necessary to secure an effective ANDA. You've got to meet them head on when they say, no, it is necessary because you have to file the paragraph 4. We have to file a paragraph certification. This is all about paragraph 4 certifications. You've got to file your paragraph 4 certification. That's a technical act of infringement, and that is designed to, in fact, allow litigation to pursue, to ensue, and therefore it's contemplated that that's a necessary feature in acquiring this intangible asset. You can't not infringe if you want to do this, and by infringing, you do provoke the fight. So I think Your Honor's questions earlier disclose why that can't be right. Simply filing the paragraph 4 certification does not mean that there will be paragraph 4 litigation. In a significant category of cases, at least 25 percent in the activist case, the Court of Federal Claims thought it might be 50, that there will not be. So let me pose a counter-legal hypothetical. If paragraph 4 instead of kind of just took a wait-and-see approach to patent infringement litigation actually required the paragraph 4 applicant to then file declaratory action that there was no patent infringement before there could be an effective date, would that, I mean, it's a difference. It's just kind of, you know, the panel is talking about that delicate balance, right? But if Congress struck that balance differently, then would that affect the capitalization decision here, or would you just say, no, all the same, because you're eventually going to get that paragraph 4 certification, you know, maybe not early, but at least upon expiration? Well, no, for a couple of reasons, Your Honor. First of all, that wouldn't in any way change the fact that the nature of patent litigation is different. It's not about securing a property right, certainly when you're defending it. And more important here, again, the patent litigation has absolutely no bearing on the ANDA approval or effective ANDA approval. You will get an effective ANDA approval. So it comes down to timing. It really comes down to timing. And so you want that ANDA approval early, especially if you're the first person to ‑‑ if you're the first entity to seek it. And so the question then becomes, is the intangible asset effective ANDA approval before expiration or effective ANDA approval upon expiration? And I suppose if we define it as before expiration, that's the hardest case for you. Before expiration of what? Of the patent. Well, except if the ANDA holder believes the patent is not effective to stop the sale of the ANDA holder's product, it's irrelevant whether the patent is still in effect or not. No, that's right. That's exactly right, Your Honor. And to be clear, the transaction that was defined by the tax court was effective ANDA approval. The government has tried to shift that on appeal by making this all about the timing. But the timing of when you secure an effective ANDA approval doesn't create a new or different intangible right. It may have some collateral benefits to it, Your Honor, but it doesn't create a different intangible, which is the ANDA approval itself. And when you start the paragraph, once the paragraph 4 certification is made, the baseline premise is that you are entitled to effective approval as soon as FDA completes its scientific review. The government is trying to ‑‑ It can happen after the litigation is concluded, right? It can happen before the litigation is concluded, and a generic could launch at risk and say we're going out there anyway, and if we suffer more damages in an infringement suit, will it suffer more damages? It can ‑‑ the FDA is going to take the time it takes, and the litigation is going to take the time it takes, and those things are not ‑‑ neither side is waiting on the other. Is that right? That's exactly right. The FDA doesn't consider the litigation at all in its approval process. And the government's position is drastically overbroad, Your Honor. It doesn't depend on whether the 30‑month stay is triggered or not, and that's clear from supplemental appendix 158. It doesn't depend on the outcome of the litigation. So even if the generic company defends the litigation and loses, the government would still say that you have to capitalize. And, again, I mean, going back to the regulations themselves, the question is whether or not the expenses facilitate the ANDA approval. In no way do litigation expenses or the litigation itself make it easier or more likely that you will get ANDA approval. It has no bearing on FDA's scientific analysis, and even if you want to look at it from a time perspective, all the litigation can do is potentially delay the date of effectiveness, but that doesn't facilitate anything from the generics perspective. Well, I mean, the question is this. There's this exclusivity period. There's all of these other things that come with the benefit of good timing in terms of the first generics application. And so it strikes me that you could say, look, if the real play here, if we say that the end goal of this transaction is the 180 days of exclusivity, and that's what we want, and then you say, and so we're defending this litigation so that we get that with the effect of FDA approval, then it seems that defending the litigation does facilitate that. The question is can you, at least my question, is can you then define intangible asset to have some sort of time dependency to it, or does intangible asset really just mean intangible asset whenever, wherever? No. I don't think you can define it based on timing, Your Honor. And to be clear, the 180-day exclusivity period is not intangible. It's a limit on FDA's ability to approve other applications. The government has never argued in this case that a P-3 certification ANDA is a different intangible than a P-4 ANDA, and they're not. It's the same intangible. It's the right to go to market with the generic drug. And the timing of it doesn't change that nature, and so I think the government's timing considerations are wrong, and they take issue with the tax court's own characterization of the transaction, which was based on the government's own argument. I do want to make a point about the backdrop and the existing law, because I do think that that's important. Not only did Congress not give any indication that it wanted to change the longstanding law that patent litigation expenses are deductible, but the IRS itself made clear that it was not changing that baseline rule. We saw that in your briefing and understand that. Can you talk to us a little bit about this origin of the claim test, which the commissioner has said that the Court of Federal Claims got completely wrong in its activist case. I should have asked Mr. Carper about this when he was up here, but we're peppering him with other stuff. We'll ask him about it on rebuttal. But can you just talk to us about the Woodward case, what this origin of the claim test is, and why, if you disagree, as I assume you do, that the claims court got it wrong. If you don't think they got it wrong, why do you think they got it right? Right. Well, we think the claims court claims got it exactly right in terms of origin of claim. The origin of the claim is just basically this Court's Urquhart decision. You look at the nature of the claim brought by the plaintiff and look to whether or not that claim is sort of part and parcel with securing a property right. And as this court said in Urquhart, patent litigation is a far cry from removing a cloud on title or defending property. And that's what it said on page 20. And that's why the patent litigation here is so fundamentally different. Now, in the Woodward case, just like the American Stores case, the courts held that the litigation was actually necessary to securing the property right. And their assertion is, yeah, that's our case. Their assertion is, you have to do this. You've got to send that notice letter, your paragraph 4 letter, which is an act of infringement under the statute. So you don't get this asset ever unless you do that. And ergo, that's the nature. That's the origin of the claim. Of course, you could file a paragraph 3 letter, too. You could, but paragraph 4 is the way the vast majority of these things arise. So what's the answer to that line of argument? It's the one that the tax court gave, Your Honor, which is that the paragraph 4 certification is an element of the process. You have to make that certification if you're the ANDA applicant. But that's their point, I think. I think their point is, yeah, you have to do it. It's a step in acquiring the asset. Just like in Woodward, you had to do what you had to do to get the asset in the end. But fundamentally, Your Honor, the litigation is different. That's not something the ANDA applicant has to do. It doesn't even initiate the litigation. It may or may not be initiated. The litigation is initiated by the patent holder to assert its rights under a different instrument, the patent itself. And those litigation expenses have always been considered deductible. And the nature of that litigation, as Your Honors well know, is no different than ordinary patent litigation. So can I just pick up on this, on the difference between paragraph 3 and paragraph 4, right? Like, if the relevant transaction is just effective approval, right, then who cares about the difference between paragraph 3 and paragraph 4? They're both ways to effective approval. But it strikes me that at least a case can be made that once a generic goes down the road of paragraph 4, it's proceeding for a different type of transaction. It's not a paragraph 3 election. It's a paragraph 4 election. And so if we're going to view paragraph 4 as defining the transaction, and paragraph 4 has a big timing component to it, potentially, the fallback is paragraph 3, then why isn't this, then why for purposes of that transaction to attain the effective approval when they want it, something that facilitates the acquisition of the intangible asset? So in both cases, Your Honor, the intangible is the same. It's an effective end approval. And many end applications, just to be clear, have multiple certifications based on different patents. And with respect to the certification, I mean, the government treats this as if it's somehow like strategic game that the generic plays by opting for paragraph 4 versus paragraph 3. The statute tells you in 355J27, it tells the applicant to make a certification to the best of its knowledge of which of these circumstances applies. And so if the end applicant determines that there's no valid patent that is going to be infringed, that's the certification it makes, and the baseline presumption is that it's right. So my takeaway from your response is, and tell me if this is too strong. This is just my takeaway from what I've heard, is that for purposes of defining the relevant transaction, it does not matter which paragraph the certification is made under. That's correct. I mean, the government has never argued otherwise. I mean, the tax court defined the transaction at page 29 of the appendix as effective end approval. It didn't say, you know, there's a difference between a paragraph 4 and a paragraph 3. It's effective end approval. And here, again, the patent litigation is in no way a necessary step in and in no way facilitates securing effective end approval. Because the moment you file your end application, if that application meets the statutory requirements based on the scientific determination, then you are entitled to an effective approval as soon as FDA makes that determination. That's the statutory provision I mentioned before. The only thing that the litigation can possibly do is delay that by converting it to a later date. But that in no way facilitates your obtaining an end approval. If anything, it makes it less easier. And so, I mean, I guess in order for that position to be wrong, you would have to read the term facilitate as making, as having a timing component to it. And so I guess you could say it facilitates it by getting it for us potentially sooner. But what you would say is even with the breadth of the definition of facilitate, and it's a big, big word, it doesn't go that far. That's right. I mean, I think there are three fundamental problems based on the text of the regulation. One is the litigation is not a part of the process. It's not a stepper element, as the tax court said. Another is that it says facilitates, and facilitate has a meaning. Well, it's got an awfully broad meaning, doesn't it? It does, but it means, it generally means make easier or help you accomplish something. The litigation doesn't do that. It in no way helps you accomplish what you're after, which is an effective and approval. It has no bearing on FDA's determination. No one would file a paragraph four if, they just file paragraph three, if they just wanted approval, you know, whenever. You file paragraph four because you want it sooner. Well, no. I'm sorry. Right? Right? Is that wrong? If you're the generic applicant, you've got to make this determination. Are there patents out there? If there are, are they valid? Will they be infringed? And if you conduct that analysis, and it's a thoughtful analysis, you have to send a letter explaining your analysis. Well, but you could send a paragraph three letter. I mean, that's the point. Paragraph three says this will be, you know, we're going to enter the market when the patent expires and not before, basically. Right? Well, I'm not sure that's right because the statute says make that certification to the best of your knowledge. So, for example, you determined that there was absolutely no patent implicated. I'm not sure you would say I want approval after this patent expires. Well, why wouldn't you? That's the point. I think that's being made or you're being asked to address, which is you could do this one way or you could do it another. You could say paragraph four not infringed or invalid. And I'm ready to fight you right now on that. Right. Right. But I would say paragraph three, the approval will become effective upon the expiration of the patent. There's a patent, but we're prepared to accept approval of our ANDA when the patent expires. Again, I would point you to the text of the statute, Your Honor, which tells us to make the certification to the best of our knowledge. And if we make that inquiry and determine that there's no valid patent that would be infringed, then we would make a paragraph four certification, Your Honor. We used to. Well, I'm not sure that's right. I mean, if we determined that there was no patent that's implicated here, to the best of our knowledge, I don't know why we would make a paragraph three. A patent that's implicated, you'd make a paragraph one certification. That's the one that says there's no patents that are involved. Paragraph four says there are patents, but they stink or we're not going to infringe them. Paragraph three says approval will be effective, I think. You know, I don't have this language right in front of me, but I think paragraph three says approval effective upon the expiration of the patent. You've got a choice, don't you, when you make that? It's not like, oh, we're driven to paragraph four. We have to do it. You could choose not to do it. You could choose a paragraph three. In that sense, are you not then choosing to litigate and accepting it as facilitative of doing what you want to do, which is get that FDA approval and get the advantage of it? No, and I don't think that, with respect, I don't think that's the right way to look at the statute in terms of an advantage or not. I mean, the statute says make that determination, whatever you believe is the most accurate determination. And then FDA, the baseline presumption is, is that that determination is right, and FDA has to make its approval determination based on scientific criteria that have nothing to do with the patent litigation, and FDA has to make that approval effective immediately, regardless of whether there is patent litigation, and regardless of whether or not the outcome of that litigation. So can I just ask a question? I asked your opposing counsel, you know, of all the tax regs and all the examples, what's maybe the best one for the IRS's case? It strikes me that maybe example 10 of A5 is the best example for him. This is the merger and the need to kind of capitalize in mergers. So I'd like to address kind of their best, but I'll give you a counterfactual hypothetical as well. What if the state law and the federal law said once you apply for merger, you've got, it will go into effect in ten years, or you can defend, you know, or you have the option of, you know, defending the Hart-Scott routine or whoever's coming in to stop the merger. Under the example, the notion was there was never that kind of soft landing, if you will, later, of eventually this will occur, and consequently, because there was no soft landing, the answer, at least in the example, is that you must capitalize because you don't get the merger absent these litigation costs, which may arise or may not arise, depending on the regulators. But I guess if the real hypothetical, if there was a 10A, said there will be a soft landing somewhere later, would it be your position then? And so maybe that's how you're distinguishing example 10? Am I doing too much work for you there or not enough, or what do you think? Just to be clear, I mean, we're distinguishing example 10 because in the American stores case itself, which that is patterned on, the court held that the litigation was actually necessary in order to secure the property there, the intangible, which was the merger. You needed the litigation. And so in your hypothetical, Your Honor, I think the question would be is the intangible that you're ultimately acquiring there, is the litigation actually necessary to secure that? I don't think the timing of when it happens, look, it may be advantageous for you to close in your house in January as opposed to March, but the fact is you're obtaining the deed to title to your house, and whether or not you close in January or March doesn't change the intangible and the relationship, the timing gets everything off track. And in terms of the examples, Your Honor, we like example 6 because it's based on this Court's own Urquhart decision. We also like example 18 as the one that Judge Jordan mentioned earlier, which shows that the mere fact that there is some connection or arguable relationship between two different processes doesn't bring them together to require capitalization. There you had the reorganization process, but yet the costs incurred in determining tort liability in connection with the deed and in connection with that were deductible because those were ordinarily deductible. The fact that they were somehow connected to that process didn't change that result, and that's the same exact thing that the tax court correctly concluded here. Okay. Thank you for your argument. Thank you, Your Honor. Thank you. Thank you, Your Honors. To clarify one point, the FDA is waiting on the outcome of the litigation. Where litigation occurs, they are waiting. Under Hatch-Waxman, this is a difference with this type of patent litigation. Under Hatch-Waxman, one of the remedies is that the court is supposed to, if the court finds that the patents will be infringed, it's supposed to enter an order specifying when the ANDA approval will become effective, and that's what the FDA does. That's not the FDA waiting on the litigation. That's a court order that may or may not emerge from litigation. I mean, there's a very careful series of triggers in Hatch-Waxman, the 45 days to file your suit, the 30-month stay, the 180 days exclusivity period. I mean, these things are set out in there, and sure, if a court orders something and says, this is infringed, you can't go to market with this, so there's not going to be an approval for you to go with this until after the expiration of the patent. That's a function of the court order. I was messing around with Chigar a little bit when I said, hey, Paragraph 3, you could choose that, but Paragraph 1 way to read this, maybe the better way to read it is they have to decide Paragraph 3, because they have to make an assessment of whether the patent is going to expire by the time the FDA is likely to approve. They're going to make an assessment, but Paragraph 4 is the one they have to go to if that's not the case, so they have to do it, but it doesn't tie the FDA's hands at all. That's them making an assessment of when the FDA might act. Is that wrong? Well, I guess I'm not totally sure that I followed you. Well, let me try it better. That was a long question. What I mean is just this. You said, oh, no, no, the FDA does have to wait. I don't think there's, point me to any place in the statute where because of the function of the statute, the FDA has to wait on stuff that's happening in the litigation. What happens is there are all kinds of timelines in there, but the FDA is doing what it's going to do, and it's doing it on its own time level. And to the extent one affects the other, it's because of something that happens in the course of the process. If the FDA says, you know what, we're pulling your anti because we don't think your active ingredients are bioequivalent to the branded drug, well, clearly that's going to send people into court to say stop the litigation. We don't have an active anti-application anymore. I mean, things can happen that affect it, but that's not in the statute. That's something that develops in the real world because two things are happening at the same time. Do you follow what I'm getting at? This is me pushing back on your assertion that they're tied together, because I don't see that. Okay, well, so they are tied together. But FDA is saying here is an ANDA, but because of the valid patent in existence, this ANDA, which has been approved, will not become effective until X date when the patent expires. That's correct. That doesn't mean that there isn't a good ANDA. It's just an ANDA that's not effective until a later date. That's right. But the asset is the effective approval. So the FDA makes two determinations. One is whether to approve the ANDA. That's the scientific issues. But there's also the FDA decides when it will become effective. And that's governed by, depends on what happens in the process as it's sent out in the statute. Your position is you've got to deduct these expenses no matter what happens. No matter what the FDA does. You have to capitalize these expenses, right? You have to capitalize the expenses because you're incurring them in furtherance of acquiring the effective approval. So can we go back to that hypothetical on example 10 that I asked your opponent? If example 10 had a soft landing built into it, that you can defend the litigation, or the merger will eventually go through after 10 years. Why in that instance would the intangible asset need to be, the acquisition of the intangible asset need to be capitalized? Because there's a soft landing there. I think the reason would be that the defendant in that case is making, they have a choice. They can say we can defend this suit or we can just concede it. And in that example we can just concede it and we'll let the merger go through in 10 years. But I guess the point is if we define intangible asset, if we define transaction as effective approval, and not building in when the effective approval takes place, then you're going to get it whenever. If you want to accelerate that effective approval date, and there's a lot of reasons for wanting that. And maybe those animate your concern, your position, because you sit there and say, look, when you get an intangible asset is really, really, really important to the utility of that intangible asset. But in order to do that, it strikes me that you would have to define the transaction as not just effective approval, but pre-expiration effective approval. And that's how you have to define the transaction. And that strikes me as a bit of an ask based on the guidance that we've got so far. What do you say? If you define the pre-expiration as part of the intangible. But I think even if you look at it as just the, it's just effective approval, which you want pre-expiration, but if you don't get that, you'll still get it later. The question is why did you incur the cost of defending the suit? And you incurred the cost of defending the suit in pursuit of getting that effective date. Now, if you lose the suit, for example, ultimately you end up with an asset with a later effective date, but you still have the asset. It's less valuable, but that's no different than any other situation where an asset turns out to be less valuable. So this just has to fall back into a broad definition of facilitate, I think, if I'm following you. This would have to fall into a broad definition of facilitate that talks not only about acquisition of the asset, but builds in a time dependency and say, oh, I am facilitating the acquisition, because I'm getting it way sooner in a way that has massive, massive market repercussions. And so if facilitate is read that way, then the answer is yeah, defending the suit does seem to facilitate it, but the end game is never at issue. There will be effective approval. That's right. Do you want to answer the origin of the claim point, or you can certainly rest on your reply brief where you do address it? Yeah, just very briefly, I would just say that we don't think that the origin of the claim test results in a different outcome. The origin of the claim, you know, it's worded very similarly. Under the regulation, it's in the process of pursuing the acquisition. Origin of the claim test is whether the origin of the claim litigated was in the process of the acquisition. Right, and their assertion is Urquhart says the origin of the claim is the patent holder wanting to defend patent rights. And you, IRS, specifically said, hey, we're not messing with Urquhart. We agree with all that. Nothing that we're doing with this regulation is meant to change that, and now you're changing it. Yeah, I mean, our view is that they have the same result. I think Urquhart wasn't precisely origin of the claim. It kind of predated that test. But, yes, I mean, I think this could try to get you to respond to what I understood the argument to be from the other side. Yeah, I think the origin of the claim, in our view, the origin of the claim is the applicant's intentional act of deemed infringement by making the paragraph four certification. And that's optional. They don't have to do that. They can do paragraph three. But the fact that it's optional, they concede that the fee, as the tax court held, that the fees they incurred for notice letters, that those were in the process of pursuing. Sure, and I guess they would say, yeah, this is example 18. Maybe reorganization expenses in a bankruptcy are capitalizable. Maybe our notice letters are capitalizable. But just like the tort in example 18 is deductible, the tort of infringement is a deductible, or defending it as a deductible expense. Well, it's been a very interview. It's well-briefed. It's well-argued. We're grateful for your time. Again, I know some people have maybe had difficulty getting here with flights grounded and everything. We're glad that you're here and appreciate it.